118 So.2d 98 (1960)
Charlotte Mildred SMITH, Appellant,
v.
DUVAL COUNTY WELFARE BOARD, an Agency of the State of Florida, Appellee.
No. B-211.
District Court of Appeal of Florida. First District.
February 9, 1960.
Mathews, Osborne & Ehrlich, Jacksonville, for appellant.
Rogers, Towers, Bailey & Jones, Jacksonville, for appellee.
STURGIS, Judge.
This is an appeal from a final judgment entered pursuant to an order dismissing the complaint in a negligence suit for failure to state a cause of action.
The complaint charged the defendant with negligence in the performance of services rendered by the defendant to the plaintiff as a non-paying or charity patient in a hospital operated by defendant. The point for determination is whether the defendant, Duval County Welfare Board, an agency of the State of Florida,[1] is immune from liability for negligence of its officers, servants, agents, and employees, resulting in injury to a charity patient in a hospital operated by the defendant pursuant to law.
The enabling act required the defendant to establish the subject hospital "for the use and benefit of the indigent sick" and provided that such hospital should care for indigent patients without charge. It was authorized, however, to receive payment from patients financially able to pay for such care. Duval County is required to levy an ad valorem tax to defray the cost of operation of the hospital here involved. Dismissing the complaint rests squarely on the proposition that the Duval County Welfare Board is clothed with immunity against liability in tort to a plaintiff who, as here, is *99 a "charity" or non-paying patient in the hospital operated by it. We concur in that conclusion.
Counties are political subdivisions of the state. As such they partake of the state's immunity from liability and may not be sued except in such transactions as the legislature designates. See Buck v. McLean, Fla.App., 115 So.2d 764 (certiorari denied Jan. 27, 1960); Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372. This accords with the general rule which, in the absence of statutory provisions to the contrary, is to the effect that public institutions created, owned and controlled by the state or its subdivisions, such as state asylums for the insane, county hospitals, reformatories, and the like, are not liable for the negligence of their agents in the performance of the public duty of protecting society from the individual who is unfortunate or incompetent in mind, body or morals. There seems to be no dissent from the rule wherever applied to a case in which an injury to the person is considered, whether he be a stranger, a patient, an employee or servant, or an invitee on the hospital premises. See 26 Am.Juris. 594.
In Suwannee County Hospital Corp. v. Golden, Fla., 56 So.2d 911, 913, the Supreme Court of Florida held that a paying patient in a county hospital is entitled to the same protection and the same redress for wrongs as if the hospital were privately owned and operated and may not be divested of constitutional rights by a statute immunizing the hospital from liability for its officers', agents' or employees' negligence. At first blush this would seem to be a departure from the mentioned general rule to a limited extent, namely, with respect to paying patients at such hospitals. Careful analysis of that opinion reflects, however, that this liability was not extended beyond the case of the paying patient, to include the case of the "charity" patient. Indeed, the court took particular pains to indicate that its ruling covered only "those patients who pay for the services they require and who are justified in expecting they will receive free of negligence the expert services for which they pay." (Emphasis supplied.)
In State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804, 810, sustaining the constitutionality of the act creating the State Welfare Board, our Supreme Court pointed out that the act establishes a public instrumentality to serve a county purpose, and that as such it is consonant with the command of Section 3, Article XIII of the Constitution, F.S.A., that "The respective counties of the state shall provide in the manner prescribed by law for those of the inhabitants that by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society."
Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193, is cited by appellant as authority for the proposition that the doctrine of immunity no longer applies to municipal corporations. This is correct, but we are not here dealing with a municipal corporation, but rather with a political subdivision of the state. As said in Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372, 373:
"While a county may, in some respects, resemble a municipality in that both organizations deal with public interest, their differences are so great that the cases discussing the latter's liability in damages for negligent omission to perform a public duty are not analogous to those in which such a liability is sought to be imposed upon a county. The one feature which sufficiently distinguishes them is that the counties are under the Constitution political divisions of the state, municipalities are not; the county, under our Constitution, being a mere governmental agency through which many of the functions and powers of the state are exercised. * * * It therefore partakes of immunity of the state from liability. * * *"
"The matter of authorizing suits against a county for damages resulting *100 to one person from the negligent performance by the county of some duty imposed upon it is one for the consideration of the Legislature * * *."
And as said in City of Tampa v. Easton, 145 Fla. 188, 198 So. 753, 754:
"Unlike a county, a municipality is not a subdivision of the State with subordinate attributes of sovereignty in the performance of governmental functions and correlative limited privileges, immunities and exemptions from liability for negligence of its employees or in other respects as may be recognized or provided by law."
Appellant also relies on State v. Sarasota County, Fla., 74 So.2d 542, and Roth v. Dade County, Fla., 71 So.2d 169, 171, in support of her position that the operation of a county hospital in caring for charity patients is a proprietary function, but they fail to support that premise. In Roth v. Dade County, supra, the question of immunity was not raised or considered by the court:
"We have considered and passed upon the liability of hospital only under the facts shown by the record in this particular case."
In State v. Sarasota County, supra [74 So.2d 542], which involved a bond validation, Mr. Justice Roberts did state:
"* * * the construction and operation of a hospital by a county is undertaken in the exercise of the county's `proprietary' services to its citizens, as distinguished from its `governmental' functions, so that the county must respond in damages for the negligent operation thereof, Suwannee County Hospital Corp. v. Golden, Fla., 56 So.2d 911 * * *."
A careful analysis of that opinion reflects, however, that the quoted phrase is dicta because the issue was expressly limited to paying patients; further that the above quotation was based entirely on the Suwannee County Hospital Corp. case, supra. And it is significant to note that in arriving at its decision in Suwannee County Hospital Corp. v. Golden, supra, the Supreme Court of Florida, at page 914, adopted the "view of the Supreme Court of Idaho expressed in Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597, 101 A.L.R. 1151, that in administering to pay patients, a public hospital was not engaged in a governmental function, but in a proprietary or private business, there being a duty to care for the indigent, but none to care for those able to pay."
As aptly said at page 603 of 50 P.2d in the Idaho case, supra:
"It is the duty of the county to take care of the `indigent sick and otherwise dependent poor.' It might discharge that duty directly or by contract. It was not bound to build a county hospital  the Legislature did not so command. Building and operating a hospital was optional and discretionary with the county. The fact that it did build and now maintains a hospital does not render the care of the indigent sick and poor in such institution any less a public and governmental duty. Having built the hospital and furnished and opened it for the discharge of its public and governmental duty, it had the power to utilize any extra or excess facilities it possessed for serving other sick persons not indigent but able to pay for the service. In serving such persons, however, it was not engaged in the discharge of its public and governmental duty, but was rather engaging to that extent in a private and proprietary business for pay and at once assumed the same relation to such persons as would any privately owned hospital sustain toward a patient entering it for hospital care. In the one case, the public duty is imposed on the county as a governmental agency of the state to care for the indigent sick and poor of the county; in the other case, no duty rests upon the county to care *101 for those who are able to purchase their own care and attention. In the latter case, the service and resultant duty is private and voluntarily assumed for pay; in the former, it is not."
In line with the Idaho court, we find no difficulty whatever in distinguishing between the position of the charity patient, who receives treatment as a ward of the state, and that of a patient who receives treatment as a paying patient. There being no governmental duty to provide hospital services for the latter, its transaction with him is in a proprietary capacity. The reverse is true of the transaction with the charity patient, toward whom a governmental function is performed.
Affirmed.
WIGGINTON, C.J., and FITZPATRICK, W.L., Associate Judge, concur.
NOTES
[1] Created by Chapter 9274, Laws of Florida 1923, re-enacted by Chapter 22650, Laws of Florida, 1945.