**UNITED STATES of America**

v.

**Sonny Eldon BUTLER.**

**Crim. No. 67308.**

United States District Court
W. D. Texas,
El Paso Division.

Sept. 25, 1963.

Ernest Morgan, U. S. Atty., Andrew Jefferson, Asst. U. S. Atty., San Antonio, Tex., for United States Government.

Frank Fullerton, El Paso, Tex., for defendant.

SPEARS, Chief Judge.

The defendant, Sonny Eldon Butler, is charged by information with a violation of 15 U.S.C. § 902(e), in that on or about September 1, 1963, having been a person who had theretofore been convicted of a felony, to-wit, manslaughter, he transported in interstate commerce from California to Texas, an automatic pistol. Prior to trial he filed his motion under Rule 41(e) of the Federal Rules of Criminal Procedure to return the pistol, and to suppress its use as evidence, on the ground that it had been illegally seized without a warrant.

After carefully considering the motion, the arguments of counsel thereon, reviewing the evidence presented, and

studying the authorities submitted by both sides, I have concluded that the defendant's pistol was illegally seized, and, as a consequence thereof, that it should be returned, and the use of it as evidence should be suppressed.

On Sunday September 1, 1963, at about 7:30 p. m., the defendant, while wearing a sport coat and carrying a suitcase, was walking West on the sidewalk in the 300 block of Texas Street, a main business thoroughfare in the city of El Paso, Texas. He was stopped by two city police officers, Detectives Placencia and Tessman, who asked him (1) to identify himself, (2) where he lived, (3) what his occupation was, (4) if he was working, (5) if he had ever been in jail, (6) if he had a weapon on him, (7) to pull his coat back, and (8) if he had a weapon in his suitcase. Both officers testified that the defendant was not committing any breach of the peace; that he was neither in nor near a bar or house of prostitution; that he was not a known criminal; that they had no information that he was a fugitive from justice or a criminal; that his appearance was no different than anyone else who had been traveling; that there was nothing about him that caused them to be even suspicious that he had committed a crime; and that he looked just like a man who may have gotten off the bus, or was going to catch a ride.

█ The officers agreed that from the moment they drove up and stopped the defendant, he was not free to go where he wanted to. But whether or not they deemed the defendant under arrest when he was first accosted, he would have been "rash indeed" to suppose he was not in the power of the officers and, therefore, under arrest by the time he was asked if he had a weapon. His subsequent submission by pulling his coat back, opening his suitcase, and handing the unloaded pistol to the officers, constituted no less a search than if the police had themselves reached into his suitcase and extracted the pistol from it. See Kelley v. United States, 111 U.S.App. D.C. 396, 298 F.2d 310 (1961).

█ From the record made in this case, it is clear that the defendant was doing nothing more than he had an absolute right to do when he was stopped. The only "reasons" given by the officers for stopping him were that they thought he "might" be wanted, because he was on foot walking down the street on Sunday, at 7:30 p. m., in the downtown business area, with a sport coat on in warm weather, having the appearance of a transient, carrying a suitcase, looking around like he was lost, and not in the immediate area of a public transportation system. These, however, hardly constitute circumstances that would authorize law-enforcement officers to detain a citizen or place him under arrest. If they do, any visiting business man unfamiliar with the city could be subjected to the same treatment. In this connection it is highly unlikely that any such visitor would agree with the officers that the only times a man wears a coat are when he is cold, attending a formal affair, or concealing something. The defendant was certainly not wearing his coat for any of those reasons. Many men habitually wear coats, particularly on Sundays, or in the evenings, or when they are traveling, and there is nothing unusual about that at all, even when the weather is warm.

Nor was it reasonable for the officers to apprehend the defendant as a potential burglar, because he was a stranger in town, and looking around like he might be lost. A burglar usually knows where he is and what he is going to do, and would not ordinarily be at work so early in the evening.

The ordinances of El Paso, the Statutes of Texas, and the Constitution of the United States require much more than a combination of the circumstances enumerated by the officers, before any citizen, local or transient, should have to suffer the indignity of being stopped, questioned, arrested and searched on the spot without a warrant of any kind, and his property seized.

█ In this case, since there is no applicable Federal Statute the laws of

Texas must be looked to in order to determine the validity of the arrest of defendant without a warrant. Hart v. United States, 316 F.2d 916 (5 Cir. 1963). In addition to the general provisions authorizing, among other things, the arrest of the offender when an offense is committed in the presence or view of the officer, or when the officer has satisfactory proof that a felony has been committed and the offender is about to escape, the statutes of this State authorize police officers to arrest without warrant all persons found "in suspicious places", and "under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws." Articles 212–217 Vernon's Ann.Texas Code of Criminal Procedure. The pertinent ordinance of the City of El Paso adds to the foregoing, all persons found "under suspicious circumstances" or "in the act of violating any law or ordinance". Section 15–1, El Paso City Code.

It is patently clear that there was no evidence showing that the officers had probable cause to arrest the defendant. It is also clear that Butler was not found "under suspicious circumstances", nor was he found "in suspicious places", nor was he found "in the act of violating any law or ordinance", nor was he found "under circumstances which reasonably show" that he had been "guilty of some felony or breach of the peace", or that he was threatening or "about to commit some offense against the law."

There may be little doubt that Butler is guilty of the offense charged in the information, but, as was pointed out in Collins v. United States, 289 F.2d 129 (5 Cir. 1961), the broad protection of the Fourth and Fifth Amendments extends to all alike, the law-abiding as well as the criminal. The Fourth Amendment provides that "(T)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fifth Amendment, among other things, provides that "(N)o person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; * * *".

Implicit in the testimony of both officers was the paramount thought in their minds from beginning to end, that defendant "may be wanted", "may be running away from someone", and "might be a fugitive from justice". When he was taken to jail he was charged with "investigation as a fugitive from justice", "carrying a prohibitive weapon", and "vagrancy". Officer Tessman said he knew that under Texas law (Article 484 of the Vernon's Ann.Penal Code) the defendant could not be legally arrested for having a pistol in his suitcase, because he was obviously a traveling person. In addition, although there was some testimony that the defendant had said he was almost broke and had not been employed for three months, Officer Tessman acknowledged that the defendant was charged with vagrancy because that was the only form of complaint available, and "we knew that we weren't actually going to stick to the vagrancy charge, but that was enough to hold him over to the next morning and we could investigate and follow up on the gun, or at least by then, check with California to see if they wanted to pick him up and extradite him back". The arrest was obviously made, therefore, for the sole purpose of investigating the defendant as a possible fugitive from justice.

I have been cited to no law authorizing an arrest for "investigation as a fugitive from justice". Even if we should assume a valid prior arrest, that came to an end when he was confined in jail under charges that were either admittedly baseless or had no legal definition. See Collins v. United States, supra.

While peace officers are to be commended for any activities directed toward the prevention of crime, they should, at

the same time, proceed with great care not to interfere with the freedom of any citizen, unless authorized to do so by the law of the land. Individual liberty is too precious to be dealt with lightly. That is why an arrest without a warrant must be scrupulously examined by the Courts to ascertain whether or not it was legally effected. The fact that it was subsequently learned that defendant in this case had been convicted of a felony, which made the transportation of the pistol in interstate commerce an offense, and had violated the terms of his probation, could not make right that which was wrong to begin with. When one's constitutional rights are involved, the end simply does not justify the means.

In view of the fact that the seizure of the pistol constituted "fruit of a poisonous tree", and cannot be justified as having been incidental to any lawful arrest, the motion to return the pistol to the defendant, and to suppress its use as evidence, will be granted.