**Bruce SEXTON, Plaintiff,**

v.

**Bruce GIBBS and Terry Stephens, Defendants.**

**Civ. A. No. 2-728.**

United States District Court,
N. D. Texas,
Amarillo Division.

May 5, 1970.

**136**

Harris E. Lofthus, Amarillo, Tex., for plaintiff.

J. Bruce Aycock, City Atty., Amarillo, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

On the 13th day of April, 1970, the above entitled and numbered cause came on for trial before the Court. Plaintiff and his attorney were present in open Court as were Defendants and their attorneys.

This is a suit brought under Section 1983 of Title 42, United States Code, which provides for civil action for deprivation of rights and reads as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Those rights which Plaintiff claims that Defendants deprived him of are the right to be free of unreasonable searches and seizures guaranteed by the Fourth Amendment and the right to be free from unlawful arrest guaranteed by the Fifth Amendment. Both rights are extended protection from state action by the Fourteenth Amendment and Section 1983 of Title 42, United States Code.

■ Plaintiff seeks monetary damages in the amount of $5,000.00 from each Defendant for deprivation of the aforementioned rights. Section 1983 of Title 42, United States Code, authorizes the award of money damages in appropriate cases brought under this section. Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965).

The conduct of the Defendants and the legal consequences thereof will be analyzed as to the two distinct constitutional claims alleged—unlawful arrest and unreasonable search and seizure.

## I. THE ARREST

### A. *Findings of Fact*

Although there is some controversy over the details concerning the arrest, the controlling facts are quite simple and as found herein are as follows:

1. About 11:15 p. m. on Thursday, May 29, 1969, Defendants, who were Amarillo city police officers, stopped Plaintiff for running a stop sign at the intersection of 35th and Georgia Streets in the City of Amarillo. After coming to a stop, Plaintiff rolled up his car windows, got out of his car, locked the car doors and got into the police car where one of the officers issued him a traffic ticket. Plaintiff appeared to be nervous and agitated but was cooperative and signed the ticket after he appeared to have read it. Defendants did not take Plaintiff into custody at that time.

2. Plaintiff returned to his car and both cars moved away from their positions during the issuance of the ticket. Plaintiff drove his car to a near-by parking lot where he stopped his car and remained in it.

3. Defendants drove away and continued to patrol their assigned area. During their patrol they returned a short time later to the area where the ticket was issued and noticed that Plaintiff's vehicle was still parked on the lot. Plaintiff was sitting inside sort of slouched over and relatively motionless.

4. Defendant Gibbs approached Plaintiff's automobile to see why he was still parked there. As he did so he noticed a large tool box on the rear floorboard. Officer Gibbs asked Plaintiff what he was doing. Plaintiff replied that he was reading the traffic ticket. The light was very poor for reading.

5. Defendant Gibbs asked Plaintiff to get out of his car which Plaintiff abruptly did, again locking the car door after he had gotten out. At this point Gibbs placed Plaintiff under arrest, handcuffed him and put him in the police car.

6. During the trial of this case Defendants, for the first time, asserted that at the time of the arrest and handcuffing of Plaintiff, that Plaintiff had jumped out of his car abruptly and in an angry manner locked the car door and suddenly turned on Defendant Gibbs with his hand upraised in a threatening manner. He was substantiated to an extent by the testimony of Defendant Stephens, and they gave this as one of the reasons that Plaintiff was handcuffed and arrested.

However, after a careful examination of the pleadings in this case, it is evident that at no time prior to the trial did Defendants assert a defense such as this. The complaint and pre-trial order were each very detailed as to the facts that they observed at the time of the incident, and not once did they mention a threatening gesture. It is not explained why the alleged resistance to arrest, threatening gesture, or threat to the safety of Defendants was not brought up prior to the trial. Such resistance or threats or even threatening gestures could not only be a valid cause for an arrest but the basis for a possible criminal complaint against Plaintiff, and such a complaint was not filed.

If this Court could believe in this case that a gesture was made toward Defendants by Plaintiff in such a manner as to threaten harm or injury to Defendants, this Court would declare this as a valid defense to Plaintiff's complaint.

Not only does it appear that this threatening gesture did not occur in the manner that Defendants now recollect, it is very obvious that Defendants did not attach any significance to any such acts on the part of Plaintiff at the time of the arrest. Although it might be that such actions by the Plaintiff *could* have influenced their decision to arrest him, it is apparent that it *did not* influence them and that it was not a factor in the decision to arrest Plaintiff. The Court finds that the threatening conduct testified about at the time of the trial did not occur in the manner described or to a degree that it would become a significant factor at the time of the arrest and of course will not be considered in the

legal determinations which follow in this opinion.

Again, it is asserted, that this could be a valid defense because this Court is of the opinion that police officers have a right to be secure in their person and well-being on such occasions, but the prior pleadings in the case do not lead to the belief that any threatening gesture of a significant nature was made by Plaintiff at the time he was arrested and handcuffed.

7. Although the nature of the arrest was never specified and no formal charges were ever filed against Plaintiff, Defendants felt that they were complying with state law and following standard police procedures when they arrested him. There was no intentional or willful abuse of Plaintiff or his Constitutional rights.

8. Plaintiff was not guilty of any felony or breach of the peace and no circumstances existed at that time which would reasonably show that he was about to or had committed some offense against the law, and no probable cause for arrest existed.

### B. *Conclusions of Law*

■ 1. Suits under this Section are a proper method by which to seek redress for violations of an individual's right to be free from unlawful arrest. 42 U.S.C. § 1983. Nesmith v. Alford, 318 F.2d 110, reh. denied, 319 F.2d 859 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964).

■ 2. States may enact statutes setting forth specific circumstances in which arrests may be made without a warrant, but an arrest under such statutes is valid only if the arrest is not violative of the Constitution. Klingler v. United States, 409 F.2d 299 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). Article 14.03 of the Vernon's Ann.Texas Code of Criminal Procedure is such a statute. This Court assumes, without deciding, that said statute is constitutional as written. Despite the use of the word "suspicious"

in this statute, it is the rule in this Circuit that a person may not be arrested on suspicion alone, Nicholson v. United States, 355 F.2d 80 (5th Cir.), cert. denied, 384 U.S. 974, 86 S.Ct. 1866, 16 L.Ed.2d 684 (1966), and that a hunch does not constitute probable cause, Lathers v. United States, 396 F.2d 524 (5th Cir. 1968). Article 14.03 of the Texas Code of Criminal Procedure provides for the arrest of a person in suspicious places and under circumstances which reasonably show that the person arrested has been guilty of some felony or breach of the peace, or threatens or is about to commit such an offense. There is no evidence or any reason to believe that in this case such circumstances existed as shown in Findings of Fact 8 above, and therefore the arrest was invalid under Art. 14.03, Texas Code of Criminal Procedure. United States v. Butler, 223 F. Supp. 24, 26 (W.D.Tex.1963).

■ 3. An arrest which is made without a warrant is not violative of the Constitution only if "at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see* also Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Klingler v. United States, 409 F.2d 299 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed. 2d 110 (1969).

■ 4. The Court recognizes the principle asserted by Defendants that there is a presumption of regularity which supports official acts of public officers, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. But this proposition does not necessarily lead to the conclusion that Defendants urge on the Court —that the burden of proof in this case

is on the Plaintiff. The Court of Appeals for the Fifth Circuit has held that once the person arrested has shown the arrest to have been without a warrant, the side advocating the lawfulness of the arrest has the burden of persuasion to establish probable cause for the arrest. Manuel v. United States, 355 F.2d 344, 346 (5th Cir. 1966). Defendants' asserted presumption of regularity would extend to an arrest with a warrant but not to one without, such as is the case here. The burden of establishing probable cause fell on Defendants. *See* Barnett v. United States, 384 F.2d 848 (5th Cir. 1967); Williams v. United States, 382 F.2d 48 (5th Cir. 1967).

5. Considering the totality of circumstances urged by Defendants and as discussed above under Findings of Fact, this Court concludes that the facts as found simply do not allow any other than a negative answer to this critical question: At the moment of arrest, were the facts and circumstances within the knowledge of Defendants and of which they had reasonably trustworthy information sufficient to warrant prudent men in believing that Plaintiff had committed or was committing an offense? Accordingly, Defendants did *not* have probable cause to arrest Plaintiff without a warrant and the arrest was in violation of Plaintiff's constitutional rights to be free from unlawful arrest.

## II. SEARCH OF PLAINTIFF'S AUTOMOBILE

### A. *Findings of Fact*

There are no material conflicts between Plaintiff and Defendants concerning the search of Plaintiff's car. The relevant facts in this regard are:

1. While Plaintiff was handcuffed in the police car Defendants, who had possession of Plaintiff's car keys, unlocked Plaintiff's car and searched the interior, and then unlocked the trunk and searched it, all without Plaintiff's permission or consent.

2. Defendant Gibbs drove the police car with Plaintiff handcuffed and seated on the front seat to the police station. Defendant Stephens drove Plaintiff's car to the police station, without Plaintiff's permission or consent.

3. Defendants again searched Plaintiff's car at the police station while Plaintiff remained inside the station in handcuffs. This search was also conducted without the Plaintiff's permission or consent. No warrant was obtained for this search.

4. After this search, during which nothing was found to implicate Plaintiff in any crime, Plaintiff was released without any charges having been placed against him in connection with his arrest and the search and seizure of his person and automobile.

### B. *Conclusions of Law*

1. The Fourth Amendment prohibits only unreasonable searches and seizures. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Suits are authorized under Section 1983 of Title 42, United States Code, to seek redress for violation of a person's right to remain secure from unreasonable search and seizure. Lucero v. Donovan, 354 F.2d 16 (9th Cir. 1965).

2. The Fourth Amendment's protection against unreasonable searches and seizures are applicable against state law enforcement officers through the Fourteenth Amendment in the same measure as against federal officers. Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969). Searches without a search warrant are not unreasonable if they are incident to a lawful arrest, United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), or made with reasonable or probable cause, Williams v. United States, 404 F.2d 493 (5th Cir. 1968).

#### a. *Incident to Arrest*

##### (1) *Unlawful Arrest*

This Court has concluded for reasons set forth under Part I, above,

that this was not a lawful arrest; that it violated Plaintiff's constitutional right to be free from unlawful arrest. Under such a conclusion, Defendants' contention that the searches were lawful because they were incident to a lawful arrest is untenable. Searches and seizures which are lawful only if incident to a valid arrest are unlawful if the arrest does not meet the test of legality. Bowling v. United States, 122 U.S.App. D.C. 25, 350 F.2d 1002 (1965). These searches and seizures were unlawful and violations of Plaintiff's Fourth Amendment right to remain secure from unreasonable searches and seizures.

### (2) *Lawful Arrest*

 Perhaps no general principle is more often stated or relied on in advocating the legality of a warrantless search than the statement previously made—searches and seizures incident to a lawful arrest are likewise lawful. However, there are limitations on the extent to which this principle can be utilized. For example, "[r]ecent decisions by [the Court of Appeals for the Fifth Circuit] confirm that for a warrantless search of an automobile under police control to be lawful it must be closely related to the reason for the arrest and the reason the car is in custody." Williams v. United States, 412 F.2d 729, 735 (5th Cir. 1969). *See* also United States v. Ryan, 415 F.2d 847 (5th Cir. 1969). The essential nexus is missing here. The police conducted not one but two general and thorough searches of Plaintiff's car while it was under their control, all without giving a plausible reason for the arrest by which the legality of the searches could be evaluated. As the Court of Appeals for the Fifth Circuit has stated in condemning a search under similar circumstances: "The search was not necessary to protect the officers, no emergency existed, nor was there danger that evidence might be lost, or that the vehicle might be removed." United States v. Adams, 424 F.2d 175, at 176 (5th Cir. 1970). There is no doubt

that on the theory of *Adams* that these warrantless searches were unreasonable.

 Another well recognized limitation on this general principle is the rule that a search can be incident to an arrest only if it is substantially contemporaneous with arrest and is confined to the immediate vicinity of arrest. Shipley v. State of California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969). The United States Supreme Court has refined this rule to hold that the search of a motor car not undertaken until the persons who had occupied it had been taken in custody to police station and the car had been towed away in police custody was too remote in time and place to have been incident to arrest. The Court then held that such a search without a warrant failed to meet the test of reasonableness under the Fourth Amendment. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The Court of Appeals for the Fifth Circuit has followed this rule in a case remarkably similar to this case in which the Court held that even if an arrest by state officers was valid, it came to an end when the person arrested was confined on a nonexistent charge and subsequent search of his vehicle was unlawful. Collins v. United States, 289 F.2d 129 (5th Cir. 1961). The same rule was applied in Barnett v. United States, 384 F.2d 848 (5th Cir. 1967).

For these reasons, the searches, particularly that one conducted at the police station were unreasonable, even if they were incident to a valid arrest.

### b. *Probable Cause*

 The issue for determination—assuming that this Court is correct in its holding that the searches cannot be upheld as being incident to the arrest as discussed in paragraph a, above—is whether there was probable cause for those searches. The test for probable cause for a warrantless search of a vehicle in custody of police is substantially the same as the test for probable cause for a warrantless arrest—the facts and

circumstances within the officers' knowledge and of which they had reasonably trustworthy information must have been sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. Hamer v. United States, 259 F.2d 274 (9th Cir. 1958); cert. denied, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959).

Since the facts and the legal standards are the same for the searches as for the arrest, the same result must be reached. There was not sufficient probable cause for the searches. Consequently, Defendants by conducting said searches deprived Plaintiff of his right to remain secure from unreasonable searches. *See* the Court's discussion in part IB5, above.

## III. GOOD FAITH OF OFFICERS AS A DEFENSE

By the foregoing discussion this Court has set forth why it has concluded that Defendants' conduct failed to meet the applicable legal standard and therefore violated certain of Plaintiff's federally protected rights. Defendants assert that, even though they may have failed to meet the standard, they are not liable to Plaintiff in this suit because they made a good faith effort to comply with the law as they understood it.

Defendants rely primarily (if not solely) on certain language contained in a recent decision of the Supreme Court of the United States to the effect that:

"* * * the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

It should be noted that important distinctions exist between the *Pierson* case and this case. There, the police officers were sought to be held liable for having arrested plaintiffs in compliance with a state statute which was later held unconstitutional. Here the officers have failed to reasonably comply with a valid state statute. Further, in *Pierson*, there was no finding that the arrest had been without probable cause while this Court has expressly held in Parts I and II, above that Defendants did not have probable cause to arrest or search Plaintiff. It is to be expected that such important and substantial distinctions may cause different results.

The Court of Appeals for the Seventh Circuit in Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968), was faced with a situation much like that present in this case. In the *Joseph* case a police officer had arrested the plaintiff without a warrant, relying on a state statute for such action. The plaintiff made out a case that the policeman had not had probable cause to make the warrantless arrest. The District Court directed a verdict for the police officer apparently on the theory that good faith was a defense to these actions. The Court of Appeals thoroughly analyzed the police officer's contention that he had acted in good faith and was therefore not liable. The police officer also cited the Supreme Court decision in Pierson v. Ray, *supra*, as dictating that a finding that he acted in good faith precluded liability.

The *Joseph* Court recognized that the decision issued in *Pierson* stated as a binding rule of law that:

"A police officer is not liable if he acted in good faith *and* with probable cause in making an arrest under a statute he believed to be valid even though the statute be later held invalid." 402 F.2d at 370.

This rule, however, was not considered controlling because the Court concluded its deliberations with the following:

"In dealing with the questions whether a person is liable under sec. 1983 only if he acted with a specific intent to deprive a person of a federal right, and in deciding that such intent was not required, the Supreme Court said section 1983 'should be read against the background of tort liabili-

ty that makes a man responsible for the natural consequences of his actions.' (Footnote omitted)

"Although the Supreme Court refers in *Pierson* to 'the defense of good faith and probable cause', available to a police officer under sec. 1983, there is no suggestion that a police officer is entitled to a defense of good faith when he makes an arrest without a warrant and without probable cause. (Footnote omitted)

"We conclude that under 42 U.S.C. sec. 1983, where a police officer makes an arrest which is unlawful under the federal constitution because made without a warrant and without probable cause to believe that the person arrested had committed or was committing an offense, sec. 1983 imposes on the officer a liability which is recoverable in federal court. Additional circumstances coloring the officer's action as flagrant or malevolent are not required." *Id.*

This Court adopts the reasoning and conclusions of the Court in Joseph v. Rowlen, *supra*, and further notes that the United States Supreme Court has also expressly stated that:

"* * * 'good faith on the part of the arresting officer is not enough.' * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. State of Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L. Ed.2d 142 (1964).

Law enforcement is of paramount importance to the public at large, especially in this day and time, and it should be that it is of equal importance that law enforcement observes and protects Constitutional rights as well as the prevention of crime and the apprehension of the criminal.

When a police officer performs his tasks in a Constitutional manner the degree and quality of police work and of the enforcement of the laws of this nation are enhanced in every respect.

When those engaged in law enforcement work ignore and violate methods of performing their tasks as are permitted and sanctioned by the Constitution, they have not just trampled upon the Constitutional rights of an individual, but they have contributed to the breakdown of law and order. This breakdown is just as real, just as damaging when the police act in ignorance or blind adherence to Constitutionally defective methods of operations as when they are motivated by malevolence or malice. A peaceful and orderly society in this nation must have strict compliance with all our laws —that includes strict compliance with Constitutional standards and sanctions —as well as the prompt and proper enforcement of the laws of the nation.

 For these reasons the defense of "good faith attempts to comply with the law as they understood it" is rejected as a valid defense in a case such as this; a case in which probable cause has not been found. *See* also Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969). Liability has been shown, the extent of which will now be discussed.

## IV. DAMAGES

 In this action, Plaintiff has not claimed or submitted proof of actual damages of any specific amount. Absence of actual damages does not defeat an action under this section. Washington v. Official Court Stenographer, 251 F.Supp. 945 (D.C.E.Pa.1966). In a claim for the violation of Constitutionally guaranteed rights damages are recoverable, nominal damages may be presumed, Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965), and the award of exemplary or punitive damages is authorized in appropriate circumstances. Caperci v. Huntoon, 397 F.2d 799 (1st Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). Those circumstances have been limited to willful or malicious violations of Constitutional

rights, circumstances which have been found not to be present here.

However, there is no doubt that Plaintiff suffered humiliation, embarrassment and discomfort in addition to being deprived of his federally protected rights as set forth above. Therefore, it is the judgment of this Court that Plaintiff recover the sum of $500.00 from Defendant Gibbs, the senior officer who was more directly connected with and responsible for Plaintiff's arrest and search of his car. Plaintiff's recovery against Defendant Stephens will be in the lesser amount of $250.00.

A judgment will be entered accordingly.