Joseph L. SCHWAB, Sr., Individually, and as natural guardian and next friend of Joseph L. Schwab, III, a minor, Plaintiffs,

v.

FIRST APPALACHIAN INSURANCE COMPANY, a corporation, J. R. Norvell, Sheriff of St. Lucie County, Florida, Defendants.

Civ. No. 72-1917.

United States District Court, S. D. Florida.

Feb. 28, 1973.

C. R. McDonald, Jr., Fort Pierce, Fla., for plaintiffs.

Ben L. Bryan, Jr., of Bryan & Koblegard, Fort Pierce, Fla., for Sheriff J. R. Norvell.

Stephen G. Hayskar, of Carlton, Brennan, McAliley & Hayskar, Fort Pierce, Fla., for Sheriff Norvell and First Appalachian Insurance Co.

Richard V. Neill, of Neill, Griffin, Jeffries & Lloyd, Fort Pierce, Fla., represented St. Lucie County.

ATKINS, District Judge.

This civil rights suit was brought by Joseph L. Schwab, as an individual and as the guardian of Joseph L. Schwab III, a minor. Count I is premised on 42 U.S.C. §§ 1983 and 1985, with jurisdiction based on 28 U.S.C. §§ 1331, 1332, and 1343. The defendants named in this count are Sheriff Norvell, First Appalachian Insurance Company (hereinafter called Appalachian), and St. Lucie County. Count II is based on diversity of citizenship and relies on the alleged breach of the statutory duty set forth in F.S.A. § 951.23. The defendants in Count II are the same as in Count I. Count III, also based on diversity of citizenship, alleges a tortious breach of the Sheriff's duty of exercising reasonable care and names Sheriff Norvell and Appalachian as defendants. Each of the above counts demands compensatory damages in excess of $50,000, and punitive damages in excess of $50,000. The causes of action alleged arise out of claimed sexual assaults on Joseph L.

Schwab III by other inmates at the county jail while he was incarcerated there from August 4 through August 6, 1972. All of the defendants have filed motions to dismiss the complaint and/or strike certain portions of the complaint for various reasons.

■ The first point that must be made clear is that the test employed at this stage of the proceedings is that the complaint may not be dismissed "unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim." Cook & Nichol v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971). *See also* Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972). As to the motions to strike, the material "will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." 2A Moore's Federal Practice, ¶ 12.21[2] (2d ed. 1972). *See* Augustus v. Board of Public Instruction, 306 F.2d 862 (5th Cir. 1962). With these caveats in mind, we turn to the motions themselves.

I

■ a) The defendants J. R. Norvell and Appalachian have moved to dismiss those portions of the complaint alleging a cause of action based on the deprivation of certain inherent constitutional or civil rights on the ground that the sheriff's department, as established under the auspices of the county, is immune from such a suit for damages. The defendants further argue that the complaint does not allege that J. R. Norvell acted individually and in such a manner so as to give rise to that type of a claim. The conclusion must be, the defendants argue, that it is the sheriff's office that is being sued, and not the individual, thereby cloaking the representative of the sheriff's office with the immunity from damage suits inherent in governmental bodies. The Court, however, is unable to agree that it must necessarily follow the defendant's characterization of the pleadings. Further it appears that J. R. Norvell is being sued in his individual capacity. The several references in the complaint as to his prior status as sheriff could be construed as serving the purpose of predicating liability on him for the acts of his deputies. *See generally* Madison v. Gerstein & Purdy, 440 F.2d 338, 341 (5th Cir. 1971). Related in part to this is the alternative ground advanced for dismissal; i. e., ". . . that it is not alleged in the Plaintiff's Amended Complaint that the Defendant, J. R. NORVELL, did himself, individually, act in such a manner so as to give rise to such a cause of action." In discussing whether a directed verdict might be proper as to the issue of a sheriff's liability for the acts of his deputies, the Fifth Circuit has noted that

> By statute, the sheriff is given the power to appoint deputies and is made responsible for their neglect and default. The Florida Supreme Court has held that neither knowledge nor consent is an essential condition to liability. Mendez v. Blackburn, 226 So. 2d 340 (Fla.1969). (footnote omitted).

*Madison, supra,* 440 F.2d at 341. It must be acknowledged that there exists a question of fact at this stage of the proceedings, therefore the motions to dismiss will be denied as to this point.

■ b) Certain portions of the two motions to dismiss and/or strike filed on behalf of the defendant Norvell then go on to request the Court to strike those portions of the complaint seeking punitive damages against Norvell. In support of this, four points are raised:

(1) Punitive damages are not recoverable as a matter of law against these defendants;

(2) The defendant Norvell is no longer Sheriff of St. Lucie County;

(3) No overt acts on his part are alleged in the amended complaint;

(4) The acts involved were not administered at his direction or with his knowledge and consent.

As to the first point, it is only necessary in this Circuit to cite Sexton v. Gibbs, 327 F.Supp. 134, 142 (N.D.Tex.1970), aff'd 446 F.2d 904 (1971), cert. denied, 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972). *See also* Caperci v. Huntoon, 397 F.2d 799 (1st Cir. 1968), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L. Ed.2d 276.

■■ The fact that the defendant is no longer the sheriff in St. Lucie County cannot control the issue of whether to foreclose the plaintiff from seeking punitive damages on the "barebones pleadings" before the Court. "Those circumstances [where punitive damages have been allowed] have been limited to willful or malicious violations of Constitutional rights . . .," Sexton v. Gibbs, *supra*, 327 F.Supp., at 142–143, and "the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact." Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970). If the evidence adduced at the trial would warrant submission of the issue, the jury will have to weigh that evidence in order to determine whether punitive damages are appropriate and also whether the fact that the defendant is no longer sheriff takes the case without the "narrow limits" for which they are justifiable. Reference to the *Madison* opinion cited earlier will indicate that the last two points listed cannot be relied on in support of the motion to strike.

■ c) Striking the cause of action under § 1985 of Title 42 is also requested "on the grounds that nowhere in the complaint are there any allegations of conspiracy." The Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), rev'g

410 F.2d 817 (5th Cir. 1969), summarized the necessary allegations when it stated that

To come within the legislation a complaint must allege that the defendants did (1) "conspire to go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

403 U.S. at 102, 91 S.Ct. at 1798. While an examination by the Court of the complaint in *Griffin* convinced it that the complaint did state a cause of action with sufficient precision and clarity to come within the test as set forth, even a cursory review of the amended complaint herein will convince the reader that the word "conspiracy" is not even mentioned, let alone alleged with the requisite clarity. The Court would not, and could not, now hold that it would be impossible for a person in the plaintiff's situation to prove a case based on the conspiracy provision of Section 1985. However, it can, and will, demand that such a plaintiff at least allege reliance on the conspiracy provision in his complaint. Mindful of the ease with which an adequate conspiracy allegation can be made, if there is evidence to support it, the Court must insist that the pleadings properly reflect those allegations. *See generally* Azar v. Conley, 456 F.2d 1382 (6th Cir. 1972). The motion to strike the reference in the complaint to Section 1985 is granted.

■ d) The final request of the defendant Norvell relates to dismissal of the Section 1983 claim on the grounds

that the allegations constitute only an isolated incident, and therefore do not amount to a violation of the federally-secured rights. In order to dismiss the allegations, it would be necessary for the Court to conclude that the attacks forming the basis for the complaint were indeed isolated. This would have to be done without giving the plaintiff an opportunity to present evidence concerning the length and duration of attacks, the culpability of the deputies and jailers, and the knowledge of the sheriff or other responsible officials. This the Court declines to do. While the complaint was not drafted *pro se,* it is still "sufficient to call for the opportunity to offer supporting evidence." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), rev'g 427 F.2d 71 (7th Cir. 1970). *But see* Henderson v. Pate, 409 F.2d 507 (7th Cir. 1969), cert. denied, 396 U.S. 914, 90 S.Ct. 233, 24 L.Ed.2d 191.

## II

█ Appalachian, in filing a motion to dismiss, adopted portions of the Norvell motions discussed in parts I(a) and (b). The decision made as to those motions is equally applicable to the motions filed by both defendants. However, the insurance company has also raised one point that was not joined in by Norvell and has not been mentioned before. The relief sought is a dismissal of those portions of the complaint seeking punitive damages based on the ground that the insurance policy involved here "specifically states that said policy does not provide coverage for punitive damages . . . ." While there are decisions supporting this contention, no cases were cited by Appalachian in support of this request. The plaintiff resists the mo-

tion at this time by explaining that the problem as to contractual coverage of the defendant will not arise until after the verdicts are rendered. Independent research, however, reveals that the delay requested in this consideration would serve no purpose.

A discussion of insurance coverage for punitive damage assessments in Florida must begin with Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962). Involved there was a garnishment against an insurance company to recover punitive damages assessed against the plaintiff, then the defendant, in a state court suit. The policy limit was $50,000, and the jury award in the previous case amounted to $37,500 in compensatory and $20,000 in punitive damages. Although the complaint sought both compensatory and punitive damages, it was undisputed that the insurance company's attorneys did not advise the insured that they disclaimed liability for punitive damages. The Court also noted the lack of notification in the policy itself.

> Walter Smith, the insured, no doubt like the average insured, had no notion that he was not protected against a judgment for the damages assessed against him. And, there is no doubt that Northwestern National Casualty and other companies, which must be conscious of the problem, keenly conscious perhaps, could easily have solved the problem by a simple language change in the exclusion clause, had they been willing to bring the problem out in the open by putting the public on proper notice that insurance companies deny liability for punitive damages.

*McNulty, supra* at 443.[1]

---

1. To demonstrate the Court's surprise, Judge Wisdom went on to say:
> The Court is shocked that this insurer failed to put the insured on notice of its intention to deny liability for punitive damages. The Court is

of the opinion that in the circumstances of this case the relationship between the parties created a duty on the insurance company to inform the insured fully and timely before the trial of the company's position that

With this factual background, then, the question facing the Court was whether the liability of an insurance company, under an automobile accident liability policy, extended to punitive damages assessed against the insured. After a review of the Florida case law discussing and defining punitive damages in this state, it was concluded that Florida characterized punitive damages as a penalty, and further that such damages were to no significant extent compensation. *McNulty, supra* at 436. Based on this conclusion, the Court squarely held that it was against public policy for an insurance company to provide coverage for punitive damages.

> Considering the theory of punitive damages as punitory and as a deterrent and accepting as common knowledge the fact that death and injury by automobile is a problem far from solved by traffic regulations and criminal prosecutions, it appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway. (footnotes omitted)

*McNulty*, 307 F.2d at 441. That decision has been followed in American Surety Company of New York v. Gold, 375 F.2d 523, 527 (10th Cir. 1966). In a later case, the Fifth Circuit casually reminded us, by way of a footnote, that "Florida law does not permit the recovery of such [punitive] damages from an insurer." Caplan v. Johnson, 414 F.2d 615 (5th Cir. 1969). The continuing validity of this statement is not necessarily challenged by a subsequent decision in Ging v. American Liberty Insurance Co., 423 F.Supp. 115 (5th Cir. 1970), rev'g 293 F.Supp. 756 (N.D.Fla.1968). The Court

of Appeals reversed a summary judgment in favor of the insurer where the cause of action alleged was bad faith refusal to settle, with the damages claimed being the amount of punitive damages awarded by the jury. Reversing for a trial on the merits, the Court framed the question to be decided on remand: Had American Liberty actually undertaken the defense of the entirety of the lawsuit filed against its insured, both as to compensatory and punitive damages? The Court was careful to close with the statement that there was no need to decide whether there was a duty to defend the insured in an action for punitive damages when joined with compensatory damages. The cause of action, if there was one, rested on the alleged voluntary assumption of the defense, with the possibility of a subsequent bad faith presentation of that defense.

> McNulty defines a duty of fair and full disclosure between insured and his insurer. It therefore reinforces rather than foreshortens an insurance company's obligation to defend its insured where the company did not tell the insured that its defense of the litigation would not afford a defense for the punitive damage aspects thereof, but where to the contrary, it undertook to make an entire defense and still now insists that its defense as made covered all allegations of the complaint.

Ging v. American Liberty Insurance Co., 423 F.2d at 120. This is not the situation in the case at bar.

The cases of Shull v. Pilot Life Insurance Co., 313 F.2d 445 (5th Cir. 1963) and Blair v. Delta Air Lines, Inc., 344 F.Supp. 360 (S.D.Fla.1972), are inapposite also. The former did not relate to recovery of punitive damages and the latter did not involve an insurance policy, although punitive damages were

the contract did not cover punitive damages. The decision of the Court is without prejudice to any action the appellees may have against the appel-

lant for damages, if any, caused by the breach of that duty.
*McNulty, supra* at 443.

claimed. There are cases construing the coverage of insurance policies to include liability for punitive damages, but those cases do not interpret Florida law. *See* Concord General Mutual Insurance Co. v. Hills, 345 F.Supp. 1090 (D.Me.1972) and cases cited therein.

Based on this review of the case law relating to the recovery of punitive damages awards from insurance carriers, the Court would ordinarily proceed to dismiss the claim as to the defendant Appalachian. One new permutation has appeared, however, making such a disposition unwarranted at this juncture. The Florida Fourth District Court of Appeals has recently rendered a decision on an interlocutory appeal where the sole question presented was summarized as follows: If an automobile owner has vicarious liability for punitive damages because of the vehicle operator's gross negligence, does the owner's automobile liability insurance policy provide coverage to the insured owner for punitive damages assessed against him solely on that basis? After deciding that the question was properly before them for such an interlocutory appeal, the Court answered the question in the affirmative. In reaching that decision, the Court concluded in this decision did no violence to the principle announced in *McNulty* and in Nicholson v. American Fire & Casualty Co., 177 So.2d 52 (2nd Dist.Fla.1965), but rather was distinguishable from it because

> In the McNulty case the fact is expressly stated, and in the Nicholson it is clearly implied, that the person against whom the punitive damages had been assessed and for whom coverage was sought under the policies involved, was in each case *the person who was the active tort-feasor*. The rationale upon which the court held in each case that the coverage did not apply was that public policy could be violated to allow an active wrongdoer upon whom a punishment is imposed to escape that punishment by shifting

it to an insurance carrier. Obviously, the courts have not found public policy to be violated where one liable for punitive damages solely because of vicarious liability has shifted that burden to an insurance carrier.

Travelers Insurance Co. v. Wilson, 261 So.2d 545, 549 (4th Dist.Fla.1972).

With these considerations in mind, and being cognizant of the position of the Sheriff as it relates to his alleged vicarious liability in this cause, the Court is of the opinion that the motion to dismiss on this ground must be denied.

### III

▮ St. Lucie County, named as a defendant in the first two counts of the complaint, files a motion to dismiss based on (1) sovereign immunity; (2) failure to comply with Rule 21; and (3) failure to state a claim upon which relief can be granted. The disposition of the motion on these grounds will be discussed below, but that will relate only to Count II of the complaint. Count I, based as it is on § 1983, must be dismissed as to St. Lucie County. It is settled beyond doubt that the county, as a subdivision of the state, cannot be a "person" subject to a claim for monetary damages. Monroe v. Pape, 365 U.S. 167, 190–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Moor v. Madigan, 458 F.2d 1217, 1218–20 (9th Cir. 1972); Yumich v. Cotter, 452 F.2d 59, 60–61 (7th Cir. 1971); Avins v. Mangum, 450 F.2d 932 (2d Cir. 1971); Henschel v. Worchester Police Department, 445 F.2d 624 (1st Cir. 1971); and Collins v. Moore, 441 F.2d 550 (5th Cir. 1971). *See generally* Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 368 (1971), rev'd sub nom., District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

a) The county is being sued in the second count on a diversity basis with the cause of action arising out of F.S.A.

§ 951.23. Under *Erie*, it is incumbent on this Court to look to the laws of Florida in order to determine whether a claim has been stated.

The first point raised by the county is that as a political subdivision of the state it enjoys immunity from torts arising from any activity classified as "governmental." Analysis of this argument must be in two stages: (1) does immunity exist for counties in the State of Florida for "governmental" activities; and (2) is the activity complained of governmental? While the state of the law in Florida on these questions is confusing at best, it is possible to come to a conclusion on both these questions and do it in a way that is consonant with the *Erie* principles.

 The counties of Florida, as subdivisions of the state, do possess immunity from tort liability for "governmental" acts. Schmauss v. Snoll, 245 So.2d 112, 114 (3rd Dist.Fla.1971); Brandeis v. Dade County, 226 So.2d 873 (3rd Dist.Fla.1969); Smith v. Duval County Welfare Board, 118 So.2d 98 (1st Dist. Fla.1960); 8 Fla.Jur. § 100 (1972). The limited waiver of sovereign immunity enacted by the Florida Legislature, F.S.A. § 768.15, having been repealed prior to the date of the alleged wrongful acts, has no application here.

 As to the character of the activity involved, whether "governmental" or "proprietary", the latter description has been held to prevail when "a governmental entity has entered into a business traditionally left to private enterprise and municipal corporations." Butts v. County of Dade, 178 So.2d 592, 595 (3rd Dist.Fla.1965). Since it goes without saying that the maintenance of a jail or prison facility is not something traditionally left to private enterprise, the duty must be classified as governmental. That being the case, the county is not liable for damages resulting from the operation of the St. Lucie County Jail.

The plaintiff does not mention in his memorandum any reliance on the theory that the purchase of liability insurance by a county will serve to waive the defense of sovereign immunity at least up to the coverage of the policy purchased, although paragraph 6A of Count I makes that allegation and Count II realleges all of the previous paragraphs. While the plaintiff may have realized the futility of that argument by the time he prepared the memorandum and decided to forego any reliance on it, the Court must make brief mention of law applicable to that theory. In Schmauss v. Snoll, *supra*, 245 So.2d at 113, it was stated:

> In fact in suing a county a plaintiff must allege in his complaint the specific methods by which the county waives its sovereign immunity, and the waiver must be clear and unequivocal. Arnold v. Schumpert, Fla.1968, 217 So.2d 116, 120.

Not only has the plaintiff not made his position clear in his memorandum, but the allegations of waiver in the complaint are oblique, confused, and incomplete at best. This can hardly be said to be sufficient under the Florida test. Keeping in mind the differences in the pleading requirements under the Federal Rules of Civil Procedure and the Florida Rules of Civil Procedure, it would be far easier for the Court to construe the failure of the plaintiff to deal with the question directly raised by defendant in its motion to dismiss as a waiver of that ground than to construe the possible purchase of insurance as a waiver of governmental immunity for this type of cause of action. Borrowing liberally from the Third District Court of Appeals opinion in *Schmauss*, the Court can only conclude that it must "dismiss as having no merit plaintiff's bare alle-

gation that [St. Lucie] County waived its immunity from suit by securing insurance." 245 So.2d at 113.

The last point to be mentioned is the propriety of dealing with this legal point at this stage of the proceedings. Earlier in this opinion the *Plimsoll* case was cited with specific reference to the test mandated for this type of situation. That decision, while still controlling here, is not dispositive of the issue.

Appellant contends that sovereign immunity is only an affirmative defense which was not raised in conformity with Rule 1.140, Florida Rules of Civil Procedure, 30 F.S.A. A state's immunity from suit relates to subject matter jurisdiction, and is not an affirmative defense. Kirk v. Kennedy, Fla. App.1970, 231 So.2d 246, 248. Lack of jurisdiction over the subject matter may be raised at any time; furthermore, lack of jurisdiction is properly raised by motion to dismiss.

Schmauss v. Snoll, 245 So.2d at 113. See Rule 12(b) of the F.R.Civ.P.

b) The disposition of this ground advanced by St. Lucie County makes further discussion of the other points raised in the motion to dismiss unnecessary.

It is therefore ordered and adjudged that:

1. The motion to dismiss and/or strike filed by Sheriff Norvell shall be and it hereby is granted insofar as it relates to the striking from the complaint of the reference to 42 U.S.C. § 1985. In all other respects it is denied.

2. The motion to dismiss and/or strike filed by Appalachian shall be and it hereby is granted insofar as it relates to the striking from the complaint of the reference to 42 U.S.C. § 1985. In all other respects it is denied.

3. The motion to dismiss filed by St. Lucie County shall be and it hereby is granted in all respects.