QUESTION: What effect does the enactment of s. 768.28, F.S., as amended by Ch. 74-235, Laws of Florida, have on the tort liability of the Southeastern Palm Beach County Hospital District?
SUMMARY: The Southeastern Palm Beach County Hospital District is included within the definitional purview of s. 768.28(2), F.S. However, with the possible exception of immunity from the tort claims of its "charity patients," the district apparently possessed no aspect of the sovereign immunity of the state upon which the state's waiver of sovereign immunity contained in s.768.28 could operate; and, until legislatively or judicially clarified to the contrary, it is the safer course to assume that the recovery of a negligently injured paying patient in the district's hospital would not be restricted to the monetary limitations on tort claims established by s. 768.28(5) and (10), F.S. Section 768.28, F.S. (Ch. 73-313, Laws of Florida), as amended by Ch. 74-235, Laws of Florida, provides in part that (1) In accordance with section 13, Article X, Florida Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. (Emphasis supplied.) The phrase "state agencies and subdivisions" is defined in s. 768.28(2), F.S., to include . . . the executive departments, the legislature, the judicial branch, and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities. See also the title to Ch. 73-313, Laws of Florida, which enacts ss. 768.28-768.30, providing that such chapter is "[a]n Act relating to claims against the state; authorizing suits against the state or any of its agencies or political subdivisions . . .;" and s. 1.01(9), F.S., which defines "political subdivision," where the context of the Florida Statutes will allow, to include "special tax school districts, special road and bridge districts, bridge districts, and all other districts in this state." (Emphasis supplied.) Applying the foregoing statutory language to the instant situation, I am of the opinion that the Southeastern Palm Beach County Hospital District (hereinafter referred to as the "district"), established by Ch. 29387, 1953, Laws of Florida, as a special taxing district with all the powers of a body corporate, and with the purpose of constructing, leasing, operating, and maintaining hospitals within the district's boundaries, is included within the definitional purview of s. 768.28(2), F.S. Cf. AGO's 074-169, 074- 89, and 071-171 holding that the special districts there involved were "political subdivisions" of the state for certain other purposes. Having thus concluded that the district is included within the definition of "state agencies and subdivisions" contained in s. 768.28(2), F.S., it is still necessary to determine what effect, if any, such inclusion has on the district's tort liability; and, in order to make that determination, it is first necessary to examine the district's tort liability prior to the enactment of s. 768.28. In this regard, the Florida Supreme Court held in Suwannee County Hospital Corp. v. Golden et al., 56 So.2d 911, 913 (Fla. 1952), that the activities of a legislatively established hospital district fall more clearly in the category of "proprietary" functions than "governmental" functions, as to those patients who pay for the services they require and who are justified in expecting they will receive free of negligence the expert services for which they pay. It was stated further that such a paying patient "is entitled to the same protection and, under our constitution, to the same redress for wrongs that he would be entitled to had he had the same experience in a privately owned and operated hospital;" and that "[a]t least as to those who are paying patients like appellee, the hospital is operated in a proprietary capacity, and they may not be divested of constitutional rights by the attempted statutory immunization." (Emphasis supplied.) Id. See also State v. Sarasota County,74 So.2d 542 (Fla. 1954); and Smith v. Duval County Welfare Board,118 So.2d 98 (1 D.C.A. Fla., 1960), in which the holding in Suwannee was not extended to "charity patients." The Supreme Court's opinion in Suwannee was further clarified in Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959), holding that, pursuant to the general rule that the state and its political subdivisions and agencies cannot be sued except where specific statutes provide authority, a county board of public instruction was immune from a suit for damages brought by a spectator who was injured when a foul ball hit her in the eye at a high school baseball game. It was stated at p. 766 of the opinion that "[i]mplicit in [Suwannee] is the conclusion that defendant [hospital district] neither possessed any of the attributes nor discharged any of the functions of sovereignty." The appellate court also went on to express the view that, if the hospital in Suwannee had been part of a statewide system maintained at public expense treating all without cost, it "would have been considered a state agency, discharging a governmental purpose, and therefore immune from tort liability just as are counties and county boards of public instruction." Applying the foregoing judicial language to the instant situation, it would appear that, except for possible immunity from the tort claims of "charity patients," Smith v. Duval County Welfare Board, supra, the district, being essentially similar to the hospital corporation in Suwannee, was not immune from tort liability in the operation of its hospital prior to the enactment of s. 768.28, F.S. Thus, with the possible exception of immunity from the tort claims of its "charity patients," the district apparently possessed no aspect of the sovereign immunity of the state upon which the state's waiver of sovereign immunity contained in s. 768.28 could operate. As to the effect of the other provisions of s. 768.28, F.S., on the tort liability of the district, it is unclear whether the State Legislature, in addition to waiving sovereign immunity from tort liability to the extent provided therein, also intended to create "blanket" limitations applicable to all tort claims against the state and all of its agencies and subdivisions. However, in light of the Florida Supreme Court's statements in Suwannee that a negligently injured paying patient in a public hospital is constitutionally entitled to the same redress for wrongs as if he had been injured in a private hospital, it would be the safer course to assume that, until legislatively or judicially clarified to the contrary, the recovery of a negligently injured paying patient in the district's hospital would not be restricted to the monetary limitations on tort claims established by s. 768.28(5) and (10), F.S.